UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SHAWNTELLE L. FISHER

        Petitioner,    Civil No. 10-2863 (RHK/JSM)

v.

WARDEN NICOLE L. ENGLISH    **REPORT AND RECOMMENDATION**

        Respondents.

This matter is before the undersigned United States Magistrate Judge on Petitioner Shawntelle L. Fisher's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Docket No. 23]. The matter has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.

**I.    FACTUAL BACKGROUND**

Shawntelle L. Fisher, ("Fisher") is a federal prisoner currently incarcerated at the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca"). Fisher has a projected release date of May 1, 2012, via good conduct time release. Declaration of Angela Buege ("Buege Decl."), ¶ 3. Attachment A [Docket No. 4].

Fisher is currently serving a 46-month sentence, followed by three years of supervised release, imposed by Judge Charles A. Shaw of the United States District Court in the Eastern District of Missouri, for Social Security Fraud, in violation of 42 U.S.C. § 408(a)(7)(a). Id.

The gravamen of Fisher's Petition is that her sentence has not been computed correctly, and that she has not been given credit for certain time when she was in state custody.

The facts bearing on the computation of Petitioner's jail credit are as follows.

On February 12, 2006, Fisher was arrested by the Hazelwood, Missouri Police Department on state charges of theft less than $500, presenting a false identification to gain entry at a casino and the leaving the scene of a motor vehicle accident (arising out of a Florissant, Missouri warrant). See Doris Jones Declaration ("Jones Decl.") ¶ 3, Attach. A (Prior Custody Documentation). She remained in state custody and was transferred to the Florissant Police Department, at which time she was booked on charges of leaving the scene of a motor vehicle accident, no insurance and improper backing. Id., ¶¶ 3, 4. Fisher was released on bond on February 14, 2006. Id., ¶4.

On June 11, 2006, Fisher was arrested by Missouri authorities on a parole violation warrant from the Missouri Department of Corrections ("MDOC"). Id., ¶ 5.[1] On August 8, 2006, Fisher's parole was revoked and she was remanded to the custody of the MDOC for service of the parole violation term. Id.

---

[1] In her response to the Government's Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 3], Fisher stated that she had been arrested on June 9, 2006 by Maryland Heights, Missouri on charges of Presenting False Identification to Gain Entry at a Casino and was later transferred to Hazelwood, Missouri for a Passing Bad Check warrant; on June 10, 2006, she was transferred to St. Ann, Missouri on Failure to Appear charges; and on June 11, 2006, she was transferred to St. Louis County, Missouri on a parole violation "in connection with her current federal charge." Petitioner's Response [Docket No. 8], p. 2. According to Fisher, she was not given credit for June 9 through June, 11 2006, the "days she spent in custody after commission of her current federal charge." Id. No documents were submitted by either Fisher or the Government to support Fisher's claim that she was arrested and placed in custody on June 9, 2006, rather than June 11, 2006. See Jones Decl., Attach. A (Prior Custody Documentation (indicating on June 11, 2006 "PV Warrant executed for Arrest").

2

On December 6, 2006, Fisher was borrowed by St. Clair County, Illinois authorities for prosecution on Illinois state charges. Id., ¶ 6.  On March 6, 2007, Fisher was returned to the custody of the MDOC. Id.

On May 30, 2007, Fisher was sentenced on state charges of forgery to a two-year sentence of imprisonment in the Illinois department of corrections. Id., ¶ 7. On August 8, 2007, Fisher completed the Illinois state sentence while incarcerated in the MDOC for the service of the parole violation term. Id.

On August 19, 2008, Fisher was arrested on federal charges of social security fraud and access device fraud, released from the MDOC to the United States Marshal's Service ("USMS") via a federal writ of habeas corpus ad prosequendum. Id., ¶ 8, Attach. B (USMS Custody and Detention Report for District of Eastern Missouri), p. 1. In November 2008, Fisher plead guilty to the charge of social security fraud. Amended Petition [Docket No. 23], p. 1. On December 2, 2008, she was returned from federal custody to the MDOC, for the completion of the service of the state sentence for the parole violation. Id., ¶ 8, Attach. B (USMS Custody and Detention Report for District of Eastern Missouri), p. 2.

On December 29, 2008, Fisher was released via parole from the MDOC to the USMS detainer. Id., ¶ 8.

On March 26, 2009, Fisher was sentenced in the United States District Court in the Eastern District of Missouri, for Social Security Fraud, in violation of 42 U.S.C. § 408(a)(7)(a), to a 46-month term of imprisonment. Id., ¶ 8, Attach. C (Judgment in Criminal Case).

On July 2, 2009, Fisher was sentenced in St. Clair County Court in St. Louis, Missouri for the charges of theft less than $500 and presenting a false identification to gain entry at a casino, to a term of 60 days on each count to run concurrent with each other and concurrent to her federal sentence. Id., ¶ 9.

In accordance with Program Statement 5880.28 and 18 U.S.C. § 3585(b), the Bureau of Prisons ("BOP") prepared a sentence computation for Fisher, commencing her federal sentence on the date it was imposed, March 26, 2009. See Jones Decl., ¶ 11. The BOP applied to Fisher's federal sentence computation 89 days of prior custody credit for the periods of February 12, 2006, through February 14, 2006 and December 30, 2008, the day after her release from the MDOC, through March 25, 2009, the day before her federal sentencing. Id., Attach. F (Sentence Monitoring Computation Data Sheet). With the 89 days of credit, plus Fisher's earned and projected good time credit, her projected date of release is May 1, 2012. Id., ¶ 11. Fisher did not receive credit for incarceration while in state custody from June 11, 2006 through December 29, 2008, which includes the period of August 19, 2008 to December 2, 2008, for the time she was borrowed from state prison and was in federal custody on the writ.

## II.    DISCUSSION

Fisher contends that the BOP has improperly refused to give her credit towards her federal sentence for the time she spent in federal custody under the federal writ of habeas corpus *ad prosequendum* from August 19, 2008 to December 2, 2008 pursuant to Program Statement 5880.28 ("PS 5880.20"). See Amended Petition [Docket No. 23], p. 1. In addition, Fisher contends that based on PS 5880.20, which allows for credit for all "'qualified non-federal presentence time,' which qualifies as *nunc pro tunc*," she is

4

entitled to credit for the time she spent in the MDOC from June 9, 2006 until August 18, 2008 and then from December 3, 2008 until December 29, 2008, pending the federal indictment and prosecution.  Id.

According to Fisher, prior to indictment on the federal charges, her state parole was revoked based on the "word of Federal Agent Tom Brady and his promise that she was actually going to Federally indicted 'within' 30 days."[2]  Id., p. 2.  Consequently, she spent her time incarcerated in the MDOC from June 9, 2006 until August 18, 2008, waiting for the federal indictment, and the only reason she was in custody was because this "pending" indictment.  Id.  Fisher claimed that she was entitled to all the time she was incarcerated through MDOC, federal detention and the BOP consistent with Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990), which "requires consideration of an inmate's request for presentence credit toward a Federal sentence for time spent in service of a State sentence" based on a request for a *nunc pro tunc* designation.  Id..

Finally, Fisher seeks consideration under BOP Program Statement 5190.05(9)(b)(4)(2003)[3] which permits "exceptions" to the general rules regarding

---

[2]  Per Fisher, she was arrested on August 15, 2005 by Bridgeton, Missouri in connection with her current federal offense, was initially questioned by Federal Agent Tom Brady, it was this arrest that led to the federal indictment for which she was charged, plead guilty and was sentenced.  See Petitioner Response, p. 3 (citing Petition, p. 8 (Administrative Remedy Response dated October 29, 2009).  She further claims that the only reason her Missouri parole was revoked was because Agent Brady "coerced Fisher's parole officer into believing that Fisher would be indicted on 'Identity Theft' charges 'within' 30 days."  Id.  The Court notes that Administrative Remedy Response dated October 29, 2009 stated that the reason Fisher's parole was revoked was based on "an arrest in 2005 for Theft and Leaving the Scene of an Accident" and the August 15, 2005 arrest by Bridgeton, Missouri Police Department, and the state charge was later dismissed because of the federal prosecution.  Petition, p. 8 (Administrative Remedy Response dated October 29, 2009).

[3]  This provision does not contain any language bearing on this case.  The Court assumes that Fisher was referring to PS 5160.05(8).

concurrent designation based on the merits of a particular case, including a prisoner's adjustment, rehabilitative efforts and contributions. Id., p. 1. In support, Fisher points to her rehabilitation and the services she provides as support for providing an exception to her case for concurrent designation. Id., p. 2.

In opposition, the BOP submits that Fisher's sentence was accurately calculated because the state of Missouri, who arrested Fisher first, retained primary custody of Fisher and did not come into exclusive federal custody until December 29, 2008. See Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, pp. 11-12. As such, the time Fisher served prior into coming into exclusive federal custody from June 9, 2006 through December 29, 2008, was applied to her state sentence, and applying it also to her federal sentence would be in contravention of 18 U.S.C. § 3585(b). Id., pp. 12-13. The BOP also noted that Fisher could not receive credit for time she did not spend in state or federal custody from June 9, 2006 through June 11, 2006. Id., p. 13 (citing Jones Decl., Attach. A). As for the *nunc pro tunc* designation, the BOP maintained that such a designation by the BOP is discretionary and that in this case, Fisher is not eligible for a *nunc pro tunc* designation because her federal sentence was imposed on March 26, 2009, after she had been officially released from state custody on December 29, 2008. Id., pp. 14-15.

A writ of habeas corpus pursuant to 28 U.S.C. § 2241 is a proper means for challenging the BOP's computation of jail credit. United States v. Tinsdale, 455 F.3d 885, 888 (8th Cir. 2006); see also Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002) ("A petitioner may attack the execution of his sentence through § 2241 in the

6

district where he is incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court.") (citation omitted).

This Court concludes that the BOP properly calculated Fisher's credit against her sentence.

Section 3585 of Title 18 to the United States Code, provides as follows:

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

As a general rule, a federal sentence begins when the defendant is "received for transportation to or arrives at 'the official detention facility at which the sentence is to be served.'" Reno v. Koray, 515 U.S. 50, 58 (1995) (quoting 18 U.S.C. § 3585(a)). Pursuant to § 3585(a), the earliest Fisher's sentence could be deemed to begin was March 26, 2009, when she was sentenced to serve her time on the federal conviction. See Mathison v. Morrison, Civil No. 06-3496 (JMR/AJB), 2007 WL 3224671, at *4-5 (D. Minn. Nov. 01, 2007) (discussing federal circuit and district cases that have found that a

federal sentence cannot commence prior to date it was pronounced, and accordingly, when it is ordered that a federal sentence run concurrently with a sentence being served, it can only run concurrently with that part of the prior sentence yet to be served.); see also Sisemore v. Outlaw, No. 09-3468, 2010 WL 364351, at *1 (8th Cir. Feb. 3, 2010) (per curiam) (stating the "district court's order that prison term should run concurrently with prison term already being served did not mean the two sentences had the same starting date; federal sentence cannot commence prior to date it is pronounced, even if made concurrent with sentence already being served") (citing Coloma v. Holder, 445 F.3d 1282, 1283-84 (11th Cir. 2006) (per curiam)); Stevenson v. Terrell, Civil No. 08-6058 (JRT/JJK), 2009 WL 1035161, at *3 (D. Minn., April 16, 2009) ("A federal sentence cannot commence prior to the date it is pronounced. Consequently, when a federal sentence is ordered to run concurrently with a sentence being served, it can only run concurrently with that part of the prior sentence remaining to be served.") (quoting United States v. McLean, No. 88-5506, 1989 WL 5457, at *1 (4th Cir. Jan. 13, 1989)) (emphasis added in Stevenson) (other citation omitted).

  Section 3585(b) allows a defendant to receive credit for time she has served in custody prior to the commencement of a sentence, arising out of the offense for the sentence imposed, so long as that time "has not been credited against another sentence." 18 U.S.C. 3585(b). Based on the plain language of the statute, "Congress made clear that a defendant could not receive a double credit for his detention time." United States v. Wilson, 503 U.S. 329, 337 (1992); see also United States v. Kiefer, 20 F.3d 874, 875 n. 1 (8th Cir. 1994) ("Because the time [the petitioner] served in state prison was credited against his Minnesota sentence, she does not appear to be entitled

8

to a sentence credit under § 3585(b), which only allows credit for time 'that has not been credited against another sentence'") (quoting United States v. Dennis, 926 F.2d 768, 770 (8th Cir. 1991)); United States v. Kramer, 12 F.3d 130, 132 (8th Cir.), cert. denied, 511 U.S. 1059 (1994) (citation omitted); McIntyre v. United States, 508 F.2d 403, 404 (8th Cir.), cert. denied, 422 U.S. 1010 (1975) (concluding that a federal prisoner not entitled to credit on a federal sentence when he received credit toward his state sentence for that same time period). Pursuant to § 3585(b), Fischer's federal sentence cannot be credited for her time in custody before her federal sentencing if that time has already been credited towards her state sentence. See, e.g., Noble v. Fondren, Civil No. 08-6259 (JRT/RLE), 2009 WL 4723357, at *6 (D. Minn. Dec. 02, 2009) ("Given that language, it is manifest that a petitioner cannot be credited for time in custody, when that time has already been credited towards another sentence."); Stevenson, 2009 WL 1035161, at *3 ("Given this language, it is manifest that a petitioner cannot be credited for time in custody before his federal sentencing if time has been credited towards another sentence.").

On August 19, 2008, when Fisher was arrested on federal charges of social security fraud and access device fraud and the USMS took custody of her on a federal writ of habeas corpus ad prosequendum for her appearance in federal court on the these charges, she was serving her Missouri state sentence. "As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005) (citations omitted).[4] There is no dispute in this case that

---

4   The doctrine of priority of custody was first recognized by the United States Supreme Court in Ponzi v. Fessenden, 258 U.S. 254 (1922). The purpose of the

Missouri first obtained custody of Fisher and therefore, had primary jurisdiction over her for the relevant period of time. Further, the fact that Petitioner spent time in federal custody before she was sentenced on the federal charges, based on a federal writ, did not serve to change primary jurisdiction from Missouri to the federal government. Id. at 896-97 ("while under the primary jurisdiction of one sovereign, a defendant is transferred to the other jurisdiction to face a charge, primary jurisdiction is not lost but rather the defendant is considered to be 'on loan' to the other sovereign.") (citation omitted); see also Munz v. Michael, 28 F.3d 795, 798 (8th Cir. 1994) (quoting Sinito v. Kindt, 954 F.2d 467, 469 (7th Cir.), cert. denied, 504 U.S. 961 (1992)) ("'[I]ssuance of [a] writ of habeas corpus ad prosequendum d[oes] not alter [the defendant's] custody status. It merely change[s] the location of his custody for the sentence he was already serving.'") (citation omitted).

Thus, given that Fisher was in the primary custody of Missouri while on "loan" to the federal government on the writ of habeas corpus ad prosequendum, she was getting credit towards her Missouri sentence for those days she was temporarily in federal custody. Stevenson, 2009 WL 1035161 at *4 ("What is most important here is that Petitioner was getting credit towards his Michigan sentence throughout this whole 345-day period, including those days when he was temporarily in federal custody pursuant to a writ."). Under these circumstances and in accordance with § 3585(b), Fisher may not receive credit on her federal sentence with the time that had already been applied

---

doctrine was to promote comity, mutual assistance and orderly procedure between sovereigns. Id. at 259. The Court stated, "[t]he chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." Id. at 260.

10

toward her Missouri state sentence. See Kramer, 12 F.3d at 132 (affirming the BOP's refusal to grant double credit for time credited on a state sentence, and citing McIntyre, supra, for the proposition that a "federal prisoner [is] not entitled to credit on a federal sentence when he received credit toward his state sentence for that same time period.").

In sum, because Fisher received credit for her incarceration from August 18 through December 29, 2008 towards her state sentence, pursuant to § 3585(b), the BOP did not error in refusing to credit this time towards her federal sentence. See Singleton v. Hollingsworth, Civ. No. 05-2082 (PJS/RLE), 2006 WL 2067761, at *1 (D. Minn. July 24, 2006) ("A defendant cannot have time that he spends in jail on a state offense before he is sentenced on a federal offense credited toward both his state and federal sentences, for that would give the defendant 'double credit for his detention time.'" (quoting United States v. Wilson, 503 U.S. 329, 337 (1992)).

The Court also concludes that BOP did not abuse its discretion when it denied Fisher's request for a *nunc pro tunc* designation for the period of June 9, 2006 until August 18, 2008 and then from December 3, 2008 until December 29, 2008. First, as for the time when Fisher was in state custody between June 11, 2006 (or June 9, 2006, based on her view of the facts) and the date of the indictment and her arrest on the federal charges on August 19, 2008 – she cannot receive credit for time spent in custody when she had not even been charged with the federal crime.

As for the time period from December 3, 2008, when she was returned to state authorities until December 29, 2008, when her state sentence ended on the parole violation and she was transferred back to federal custody awaiting sentencing, Fisher

maintained that Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990) dictated that she receive credit for this time period in state custody. The petitioner in Barden, who had been waiting for trial on state charges for a robbery, was given over to the custody of the federal authorities on a writ of habeas corpus ad prosequendum, and sentenced by a federal court on the same bank robbery to twenty years of imprisonment. Id. Following sentencing on the federal conviction, he was then returned to state court. Id. Subsequently, the state court sentenced the petitioner to a prison term that was to run concurrently with the federal sentence. Id. The petitioner served ten years in state prison and was then paroled to federal custody where he began serving his twenty-year federal sentence. Id. Because the BOP had not designated the state prison as a place of federal confinement, the petitioner did not receive credit on his federal sentence for the ten years he served in state prison. Id. at 477-478. The Third Circuit found that the BOP was mistaken that it "was solely within the province of the sentencing court to determine concurrency; however, the sentencing court not only was unable to order concurrency because it sentenced Barden before the state did but was actually powerless to do so. Id. at 483-84 (citation omitted). The court held that the BOP has "an obligation, on the peculiar facts before us, to look at Barden's case and exercise the discretion the applicable statute grants the Bureau to decide whether the state prison in which he served his sentence should be designated as a place of federal confinement *nunc pro tunc*." Id. at 478 (emphasis added).

The facts in this case are inapposite to those in Barden. There, the petitioner was seeking a concurrent designation for time served in state custody, which was credited against the state sentence, after the imposition of his federal sentence. Here,

Fisher is seeking credit for time served on state offenses <u>prior</u> to the imposition of his federal sentence. See <u>Myers v. Outlaw</u>, NO. 2:10-CV-00080 SWW, 2011 WL 873343, *8 at (E.D. Ark. Feb. 03, 2011) ("<u>Barden</u> and <u>McCarthy</u> are inapposite as they involved federal sentences, followed by a state sentence."); <u>Gonzalez v. Hawke</u>, NO. CIV. 05-0429(NLH), 2006 WL 2465307, at *6 (D.N.J. Aug 21, 2006) ("Unlike Petitioner, Barden sought credit for time served in state custody (and credited against a state sentence), <u>after</u> imposition of his federal sentence. *Nunc pro tun[c]* designation under <u>Barden</u> is not available for Petitioner because Petitioner seeks credit against his federal sentence for the 34 months he served in state custody <u>before</u> he was initially sentenced on November 16, 1998. <u>Barden</u> does not authorize the BOP to award credit for time in state custody prior to imposition of a federal sentence.") (emphasis added).

"[W]hen a federal defendant is already serving a state sentence, BOP has the practical power to 'make the federal sentence run concurrently by designating the state prison as a place of federal confinement, so that "'the clock would start to tick on the federal sentence.'" <u>Fegans v. United States</u>, 506 F.3d 1101, 1103 (8th Cir. 2007) (quoting <u>Romandine v. United States</u>, 206 F.3d 731, 738 (7th Cir. 2000)). The Eighth Circuit has assumed that "the BOP has statutory authority to make *nunc pro tunc* designations that have the effect of making a federal sentence concurrent to a <u>later-imposed</u> state sentence." <u>Id.</u> (emphasis added). In this case, the "clock" had not started "ticking" because Fisher had not been sentenced on her federal case during the period she is seeking credit based on her state custody. Further, this is not a case where the sentencing federal court did not have the opportunity to order concurrency to the state sentence like in <u>Barden</u>. See <u>Myers</u>, 2011 WL 873343, at *7 ("<u>Barden</u> held

that the BOP has the authority to make a *nunc pro tunc* designation that has the effect of making a federal sentence concurrent to a later-imposed state sentence, a situation where the federal district court lacks the power to order concurrency.").

Most importantly, Fisher is asking this Court to do the impossible in ordering a federal sentence to commence prior to its date of imposition. See Noble, 2009 WL 4723357 at *5 ("[T]he Sentencing Court, here, ordered the impossible. The Petitioner's Federal sentence could not have commenced prior to the date that it was imposed-August 24, 2005."); Singleton, 2006 WL 2067761, at *1 ("Since the Petitioner's Federal sentence was imposed on September 24, 1998, the Federal sentence could not commence until on or after that date. Accordingly, the Sentencing Court's Order, which directed that the Federal sentence would run concurrently with the State sentence, did not require—indeed, could not require—that the Petitioner's Federal sentence would begin with the commencement of his State sentence.") (citation omitted). Because Fisher is asking the BOP to designate a state facility for time served prior to the imposition of a federal sentence, the BOP did not abuse is authority in refusing to make the *nunc pro tunc* designation.

Finally, while the Court appreciates the steps Fisher has taken to rehabilitate herself and serve the community, the Court cannot grant her concurrent designation on this basis. See Amended Petition, p. 2; Fischer Resp., p. 4. Fisher relies on PS 5160.05, which provides in relevant part:

> 8. AUTHORITY FOR DESIGNATIONS. The Bureau's authority to designate a state institution for concurrent service of a federal sentence is delegated to Regional Directors.

> ■ A designation for concurrent service of sentence will be made only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system.
>
> a. Exceptions to the general rules regarding concurrent designation may be based on the merits of a particular case. Information reviewed will include:
>
> ■ inmate discipline history,
>
> ■ institutional adjustment,
>
> ■ recommendations of the Wardens at the state and federal institutions,
>
> ■ the recommendation of the prosecuting Assistant U.S. Attorney,
>
> ■ intent of the federal sentencing court, if available, and
>
> ■ any other pertinent information regarding the inmate.
>
> b. In the event of an "exception," the above information will be sent to the appropriate RISA who will coordinate a response.
>
> The Regional Director is the final authority to determine exceptions.

PS 5160.05 (8), http://www.bop.gov/policy/progstat/5160_005.pdf.

Even if evidence had been provided to the Court of Fisher's rehabilitation, this Court cannot order a federal sentence to commence prior to its date of imposition.

For all of these reasons, Fisher's arguments that she should receive credit towards her federal sentence for the time she spent in state custody are rejected and her Petition should be denied.[5]

---

[5] This Court also rejects Fisher's request for an evidentiary hearing as she has not alleged a factual dispute in her Amended Petition that if resolved in her favor would justify relief. See Shelton v. Ciccone, 578 F.2d 1241, 1245 (8th Cir. 1978) (finding in a § 2241 habeas case that "[w]hen the facts alleged in a habeas petition would justify relief if true, or when a factual dispute arises as to whether or not a constitutional right is being denied, the District Court must grant an evidentiary hearing.").

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that Petitioner Shawntelle L. Fisher's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Docket No. 23]. be **DENIED**.


Dated: June 14, 2011

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 28, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.